UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MCALLISTER SOFTWARE SYSTEMS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:06CV00093 RWS |
| HENRY SCHEIN, INC., | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before me on the parties' cross motions for summary judgment [#34, 37].

Plaintiff McAllister Software Systems, Inc. ("McAllister Software") seeks to have an Exclusive Distributor Agreement ("EDA") between McAllister Software and Defendant Henry Schein, Inc. ("Schein") declared null and void from creation. McAllister Software alleges that the EDA:

- violates the applicable New York Rule against Perpetuities,

- violates the New York common law rule against unreasonable restraints on the alienation of property,

- contains an unlawful covenant restricting post-termination competition in violation of New York law and public policy, and

- is unconscionable.

Schein moves for summary judgment on all counts of McAllister Software's complaint on the basis that:

- the EDA is valid and enforceable,

- McAllister Software's declaratory judgment claim is not ripe for adjudication, and

- McAllister Software cannot establish one or more of the essential elements of its claims.

I will grant summary judgment in favor of McAllister Software because I find that two provisions of the EDA violate the New York Rule against Perpetuities, and the EDA is therefore null and void from its creation.

**I.   BACKGROUND**

McAllister Software is a Missouri corporation. Schein is a Delaware corporation. On April 1, 1990, McAllister Software and Schein entered into an Exclusive Distributor Agreement ("EDA") granting Schein the right to exclusively sell, distribute, and license McAllister's Veterinary Management System ("the Software") throughout the world. The EDA requires that McAllister Software provide Schein with all updates and upgrades to the Software, as well as the right to be the exclusive distributor of any and all *future* software produced, developed or acquired by McAllister Software in the veterinary market *at any time* on substantially the same terms as the EDA. The EDA provides that its terms shall be interpreted in accordance with the laws of the State of New York.

The EDA states that it had an initial duration for the period of April 1, 1990 through June 30, 1992. In addition to the two year term, the EDA is automatically renewed for successive two-year terms for so long as Schein sells 280 units of the Software during the prior two-year term. Schein has met or exceeded this requirement for the past seventeen years. Even if Schein fails to meet this requirement, the EDA does *not* terminate. If Schein does not meet the sales goals, Schein's exclusive distributorship for the current software merely converts to a non-exclusive distributorship. Section 8(c) of the EDA also states that "Schein shall have the right to be the exclusive distributor of any other software designed for the Market that [McAllister

Software] produces, develops, or acquires the rights to, *hereafter*." (emphasis added). The EDA does not provide any circumstance or event which would result in the termination of Schein's control over McAllister Software's development of software in the future.

Under the terms of the EDA, McAllister Software is required to refer all potential purchasers of the Software to Schein. Customers must purchase the Software through Schein and Schein controls and sets all prices for the Software. The EDA also requires McAllister Software to deposit its source code for the Software in escrow and permits Schein access to the source code to validate whether it is current and review the code. Section 17(c) of the EDA further provides that McAllister Software "will keep and maintain a current version of the Software's source code and supporting documentation ("Escrow Materials") in escrow with its attorney or a professional computer software escrow agent ("Escrowee") . . . *If* [McAllister Software] fails to support the Software to the reasonable satisfaction of Schein and Schein's customers or *if* [McAllister Software] ceases to do business, Schein shall have the right to immediately obtain the source code from the Escrowee , and [McAllister Software], by its execution hereof, hereby authorizes Escrowee to release the source code to Schein only under said circumstances." (emphasis added).

The EDA prohibits McAllister Software from entering into any distribution agreement with a "direct or indirect" competitor of Schein for the Software for two years after Schein ceases being the Software's exclusive distributor. The EDA also grants Schein the right of first refusal in the event McAllister Software ever decides to sell, license or assign any or all of the business of McAllister Software or its assets.

Shortly after execution of the EDA, Schein unilaterally changed the trademark of the Software from McAllister Software's trademark to "AVIMark," a trademark which Schein has since registered with the U.S. Patent and Trademark Office.

## II.   STANDARD OF REVIEW

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## III. ANALYSIS

### A. Choice of Law

Missouri courts honor contractual choice of law provisions. Rheem Mfg. Co. v. Progressive Wholesale Supply Co., 28 S.W.3d 333, 339 (Mo. App. E.D. 2000); Stone v. Crown Diversified Indus. Corp., 9 S.W.3d 659, 666 (Mo. App. E.D. 1999). New York law by statute permits parties to designate New York law as the governing law of a contract between such parties. N.Y. Gen. Oblig. Law § 5-1401(1). The EDA expressly provides that its terms shall be interpreted in accordance with the laws of the State of New York. Therefore, under Missouri law, New York law applies to and governs the EDA.

### B. New York Rule Against Perpetuities

McAllister Software argues that the EDA should be declared void from creation because it violates the Rule against Perpetuities as codified by the State of New York.

The Rule against Perpetuities, Article 9, Section 1.1 of the New York Estate, Powers and Trust Law ("EPTL") prohibits the suspension of the absolute power or alienation of any present or future estate for a period beyond lives in being at the creation of the estate plus twenty-one years. EPTL §9-1.1(a); Wildstein & Co., Inc. v. Wallis, 79 N.Y.2d 641, 647 (1992) ("The Rule against Perpetuities, though founded in a real property context, became generally applicable to interests in both real and personal property"); Edson & Co., Inc. v. Hudson Motor Car Co., 132 Misc. 223 (Mun. Ct. N.Y. 1928) (provision in a contract for sale of an automobile prohibiting the buyer from transferring his interests under the agreement void under the Rule against Perpetuities).

New York courts have held that where no measuring lives are stated in the agreement and the parties to the agreement are corporations, as is the case here, the permissible period for the

suspension of the absolute power of alienation is twenty-one years.  Metro. Transp. Auth. v. Bruken Realty Corp., 67 N.Y.2d 156, 161 (1986).  Under the Rule against Perpetuities, if the present or future property interest created by an agreement suspends the absolute power of alienation by any limitation or condition for a longer period than permissible, the interest shall be void *in its creation*, regardless of when the agreement was created or whether or not the property interest becomes vested.  EPTL § 9-1.1(a) (emphasis added).

The Rule against Perpetuities was established to "ensure the productive use and development of property by its current beneficial owners by simplifying ownership, facilitating exchange and freeing property from unknown or embarrassing impediments to alienability." Met. Transp. Auth., 67 N.Y.2d at 161 (citing De Peyster v. Michael, 6 N.Y. 467, 492-94 (1852)). The New York Court of Appeals has expressly stated that the Rule against Perpetuities applies not only in the context of real property interests, but also to interests in personal property created by commercial agreements.  Wildstein & Co., Inc. v. Wallis, 79 N.Y.2d 641, 647 (1992) ("The Rule against Perpetuities, though founded in a real property context, became generally applicable to interests in both real and personal property").

Schein contends in opposition that the EDA is merely a license which "vested" in 1990 and therefore is valid and enforceable pursuant to its terms.  Schein argues that the EDA merely grants it "the license to be the exclusive distributor of the software . . ."  However, I find that the EDA is *not* merely a license agreement.  Schein is correct that the EDA involves the purchase and sale of software.  However, the EDA also permanently restrains McAllister Software's right to freely sell its software and to develop and market new software.  The only true license in the EDA is a license for Schein and its customers "to use the software."

Even if I found that the EDA was a license, Schein's only support for the proposition that the Rule against Perpetuities does not apply to licenses is an Arkansas case, <u>Ultracuts Ltd. v. Wal-Mart Stores, Inc.</u>, 16 S.W.3d 265, 270 (Ark. Ct. App. 2000). This case is not controlling as it is merely persuasive authority in this case where New York law controls.

Schein alternatively contends that the property right transferred to Schein under the EDA became fully vested in Schein at the moment the contract was executed. However, I find that the restraints are on McAllister Software as to transfer or alienation of its software *and* as to the development of its business now and in the future. The EDA gives Schein the right to be the exclusive distributor of the software, with the option for perpetual renewal by selling 280 units every two years at prices set by Schein. The EDA also grants Schein the option to purchase the software and "any other software designed for the Market that [McAllister Software] produces, develops or acquires the rights to, *hereafter*." (emphasis added) In other words, the EDA provides Schein with control over McAllister Software's future development of software forever. The EDA also requires McAllister Software to give Schein access to McAllister Software's source code for the software if McAllister Software ever sells the company. The provisions of the EDA are subject to the prohibitions of the Rule against Perpetuities.

Sections 8(c) and 17(c) of the EDA violate the Rule against Perpetuities. Section 8(c) states that "Schein shall have the right to be the exclusive distributor of any other software designed for the Market that [McAllister Software] produces, develops, or acquires the rights to, *hereafter*." (emphasis added). Section 17(c) states that McAllister Software "will keep and maintain a current version of the Software's source code and supporting documentation ("Escrow Materials") in escrow with its attorney or a professional computer software escrow agent ("Escrowee") . . . *If* [McAllister Software] fails to support the Software to the reasonable

7

satisfaction of Schein and Schein's customers or *if* [McAllister Software] ceases to do business, Schein shall have the right to immediately obtain the source code from the Escrowee , and [McAllister Software], by its execution hereof, hereby authorizes Escrowee to release the source code to Schein only under said circumstances." (emphasis added).

Because no measuring lives are stated in the EDA and the parties to the EDA are both corporations, the permissible period for the suspension of the absolute power of alienation is 21 years. Metro. Transp. Auth., 67 N.Y.2d at 161. Sections 8(c) and 17(c) of the EDA provide Schein with control over any and all future veterinary products McAllister develops or acquires into the future, even if McAllister Software sold its assets or ceased operations. I find that the property interest created by the EDA suspends McAllister's absolute power of alienation for a period longer than 21 years.

Therefore, I find that the EDA is void *in its creation*. EPTL § 9-1.1(a) (emphasis added).

Accordingly,

**IT IS HEREBY ORDERED** that McAllister Software Systems, Inc.'s Motion for Summary Judgment [#34] is **GRANTED**.

**IT IS FURTHER ORDERED** that Henry Schein, Inc.'s Motion for Summary Judgment [#37] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of April, 2008.